We have 4090810, Carl Sartwell v. The Board of Trustees. We have for the appellant, Stanley Eisenhammer, and for the appellee, Ralph Lowenstein. Please proceed. May it please the Court. I am Stanley Eisenhammer, and I represent the plaintiff, Carl Sartwell. This case presents the question of the proper interpretation of the TRS, Teacher Retirement System, regulation, which is commonly called the conversion rule. This rule prevents teachers from artificially increasing their pensions by converting non-credible earnings, for example, board-paid life insurance, into credible earnings, such as salary, within a certain period of time of their retirement. The rule says seven years, without a legitimate reason. The rule presumes that any such change within seven years does not have a legitimate reason. But it's a rebuttable presumption, and the teacher may rebut it for a legitimate reason. It is Mr. Sartwell's position that he did rebut the rule presenting a legitimate reason, and TRS's rejection of his legitimate reason, because it did not fall in one of the three examples of legitimate reasons that are contained in the rule, is contrary both to the expressed language of the rule and its intent. In this case, Mr. Sartwell's wife became newly employed, and as a result, her employer for the first time provided her with health insurance. This was his legitimate reason, that he could get insurance cheaper through his wife, who did get insurance for the first time, and he no longer needed insurance. This reason is identical to the situations of a teacher who drops family health insurance because of a divorce, or because of the employee's spouse dying, or because the teacher's child graduated from college. Both of these reasons, which are called change in family status, are recognized as legitimate by TRS, and TRS admits that in its brief. And there is no difference in those two types of rules. In fact, if I thought about it, I think I'm thinking about it now, I should have advised Mr. Sartwell to divorce his wife, and then he could have done this. Even though the need was the same, and the reason wasn't to artificially increase his salary. The reason was if there was a change in his wife's insurance, her employer allowed her to have insurance, and he no longer needed family insurance. Again, same way as if the wife had divorced. These facts are undisputed. It was submitted by an affidavit by Mr. Sartwell. We could have had a hearing. TRS could have challenged that reason. Did the board make a ruling? It basically ruled that this reason didn't fit into one of the three reasons contained in the rule. When did they do that? In 2009. Anything happen prior to that with respect to this proceeding? Yes. The history of this is in 2005, there was an audit. The audit notified Mr. Sartwell that he had done this, and that if he retires within seven years, there was a possibility... There wasn't. If he retired in seven years, and didn't produce evidence of a legitimate reason, it would be considered non-credible. And what did he say? He... He then... He did nothing. He did nothing. Does that help him? He did nothing? It didn't help him. No one told him that he had to do anything. In fact, TRS did nothing. I mean, that's important. TRS was an audit. They didn't change his credible earnings. They didn't reduce the amount that was paid to him at that point. They just told him that if he retired within seven years without producing additional evidence, then that would be... They would view it as a conversion, unless he produced evidence. They didn't request evidence at that time. And really, nothing was done, because really, nothing has to be done. Now, I know... There's no claim that TRS acted any differently in this case than they ordinarily did? That there's a pattern in practice that TRS would give notice, advise of the right to appeal, etc.? Right. As far as I know, no. I mean, we didn't get into that issue. You know one thing. If he had appealed at that point, if TRS didn't say the case wasn't right because nothing happened, if we had appealed that decision, let's say they issued a decision, and we came before you on this issue, you would have said this case was not right, because you would be rendering an advisory opinion because the rule doesn't come into effect until he retires within seven years. Because if he retired within eight years, all of that would have been credible. So the rule was not... The issue was not right. When they talk about staff disposition, I think it's more than a letter. It's action by the agency. At that time, they took no action other to inform him that if he retired within seven years, he would do it. They did reduce his TRS contributions based on that money. That didn't occur until he retired. And as I said, TRS rejected his legitimate reason because it was not one of the three examples in the rule. But nothing in the rule says that it's limited to those three examples. What other exceptions to those three examples are there? One is if it's contained in the collective bargaining agreement, and the other is change of employer or change of job. And those are the same types of issues. For example, it shows that it doesn't... Those are just examples. For example, if the group was not unionized, and the employer passed a policy that affected everybody with respect to this rule, TRS would argue under their position that that wasn't a legitimate reason. Because it's not, even though it's exactly the same. The only difference is one group of employees are unionized, one group isn't. But here, the rule doesn't say we're limited to three examples. It says if you did it for artificial reasons, then you don't get it. Here, again, he presented a legitimate purpose. When did he do that? He did that at the time of his retirement, in 2008. Well, what did they mean in their November 4-5 letter of statements when they said the converted salary will be excluded from credible earnings if Mr. Sartwell retired before the 2011-12 school year? Is that kind of clear, what they said? It's clear, but it doesn't come into effect. You can't tell whether or not the rule applies, will apply, until he retires, either before or after 2011. That's exactly what they said, isn't it? Yes. They said it. I think the issue here is whether it follows their rule, first off. Second is the question of notice. What did they also tell him in that letter, the contact information for the system employee to contact? Right. But they don't say, you know, you have a right to appeal. You're talking about, at this point, first of all, he didn't even make an inquiry. This came through the agency. He didn't make an inquiry. You're not talking about people who are represented. You're talking about a highly educated high school superintendent principal. Right. Who may or may, this rule may or may not affect. And with respect to notice, I had a case before a different panel last year. When I got the decision, this highly educated lawyer got a notice from the court, along with the decision, saying that you have 21 days to ask for a rehearing and 35 days to appeal to the Supreme Court. This is a layperson who wasn't given direction. Their rule says staff disposition. The letter doesn't say staff disposition. It says nothing. It says you may send in additional information. And, yes, looking back, as a good non-procrastinator, he maybe should have sent in information. But if he did send information, and he did appeal, and they ruled against him, we would be here. And I know this court would say it's not right, because the issue of whether seven years have passed hasn't occurred. In the end, TRS is manipulating the actual substantive rule. TRS is manipulating the rule to get the results it wants, in this case. In essence, to a catch-22, which is... Well, let me go back to say that his reason falls within one of the three exceptions. I don't think it needs to, but I think it falls into one of the three exceptions, which is change in family status. It's no different than, as the TRS admitted, that when a person doesn't need family health insurance anymore because a dependent has graduated college. There's no difference between that and your spouse getting a new job. In fact, under IRS regulations, that would be considered a change in status, allowing the employees to do various things under the Internal Revenue Code with respect to benefits. Now, I know they don't necessarily have to follow IRS rules, but they do in this area. They follow rules with respect to dependents. They follow the rules with respect to cafeteria plans and deferred compensation. And it's a reasonable interpretation of change in family status to include not just, I lose a spouse, either through divorce or whatever, or death. It's a change in the family relationship, which has occurred, for example, when a dependent child graduates college and no longer needs insurance. This is just a wife who gets a job but no longer needs insurance, which happens for a lot of families after the kids graduate and you're closer to retirement. The IRS goes on to say, I think improperly, that it doesn't matter. There was an increase in salary. But there's always an increase in salary when you do the conversion rule. Otherwise, there's no need for the conversion rule. The real question is, was the reason for the increase in salary done for a legitimate reason, not to artificially raise your final year's salary? And here it was, because, again, the wife could get insurance. In the end, by using pay, if you raise the salary, if your salary goes up, you automatically lose. What the IRS is doing is creating a catch-22, where you can have a legitimate reason everything works. Then they say, oh, you're in salary increase. It must be because of an improper reason. Finally, on page 4 of the decision, the IRS recognizes strong policy reasons for the conversion rule. We do not dispute the policy reasons for the rule, although we do set notes. The IRS, under statute, there are limits to increases in salary. There's already a rule that says if an employee's salary increases more than 20%, anything above 20% in a year is not recognized as credible earnings. So there is ways to limit, statutorily, ways to limit large increases. In addition, there is a 6% rule that says if an employee's salary increases by more than 6% in one of those years that are counted towards retirement, the employer has to pay a penalty, has to pay the actuarial costs of that increase. So there are ways to hold this back. However, just because there's strong policy reasons doesn't give the IRS license to do whatever it wants, just because it thinks it's good policy. What they need to do is follow their own rules. And when the rule is followed, based on the facts in this case, Mr. Sarkoil presented a legitimate reason, and therefore the conversion rule shouldn't apply to him, and he should be allowed to have the salary increase counted towards retirement. With respect to the second issue, which we sort of dealt with already, in part, there was the disposition, the staff disposition that was important in this case, came in January 31, 2008, when he submitted his evidence, post-retirement, and the TRS rejected. He then appealed that decision within six months of that decision. In the meantime, no one told him, hey, there was a decision in 2005 that precluded you from appealing. In fact, TRS, General Counsel, sent him papers to appeal. That was the decision that he was appealing from. With respect to the 2005 decision, nothing in the rules, in the letter, says it's a staff disposition. Nothing in the letter says that. In fact, it says something else. It's an audit. It's a regular audit. So even if Mr. Sarkoil had read the letter like a lawyer, and then read the manual like a lawyer, at least the lawyer who was representing the client, as opposed to the lawyer representing himself, he would not necessarily put the two together, because once a staff disposition, it just doesn't. It doesn't say anything. So in the end, he appealed from the correct order. Did they make an adjustment? They made an adjustment. Yeah, I forgot about that. They did make an adjustment after that. What was that based on? The reexamination of the case. What was the adjustment? It was a small adjustment because they actually decreased the salary more than what the increase in the insurance was. So they recognized they made a mistake and they decreased it. He could have appealed from that. That came within January 31st was the final disposition, so to speak. February 7th is when he got his appeal orders. In April, I can't remember the date, April they made a readjustment, and in May he appealed. So they were doing things. They called it a courtesy. But I don't know if they reduced the salary. I don't know if they have the same courtesy. They found the mistake and they reduced the salary. But they argued then, hey, you can't appeal because it was done there. And there's no distinction in the rules between courtesy adjustments and staff dispositions, which is rude. We just want them to follow their rules and follow their rules right. I find this is just a way of defeating an employee's claim. Another way, rather than hearing the case on substance, it's denying him an opportunity to be heard. And it's a denial of due process. When you look at any of the cases on due process, Matthews v. Eldridge. Which is your best case? Matthews v. Eldridge. The United States Supreme Court case. It says, for due process, you have to be fair. You need notice. The notice has to be real. You balance the burden on the interest needs to be high. This is a major interest. He's losing his pension. Here he's lost $5,000 a year on his pension. But it could be his whole pension or most of his pension. And the burden on the employer or the government to give him notice. And all it required is what you do in every one of your cases, which is to say, this is a staff disposition. You have six months to appeal. But didn't they ultimately rule on the merits also? Well, they did. But I would like you to get to the merits, because I have to do a double jump to get to the merits, right? I have to get over the hurdle if it's not timely. But TRS actually issued a ruling on the merits. So, in other words, they didn't say, you're foreclosed from presenting your case to us because you never appealed. But they're doing it now. Well, they were doing it in the letter, too. You're right. But I have to get over that double jump if I'm going to get to the merits and win the case. I wish I wouldn't have to do that. Are audits ever treated as staff dispositions? I don't know. Well, I personally think it's based on what's best for TRS. They have things, you know, you're either too ripe, and you appeal to TRS, who's a 1,000-pound gorilla. If you appeal too early, it's too ripe. If you appeal too late, you're not timely. And, again, the burden here is just to put in notice. Well, there seems to be a dispute between Matthews and other Supreme Court cases that talk about the requirement that articulating reasonable notice test is what it's called. And then the question is whether the notice of dependency of the action and the consequences of a failure to respond were clear from your November 2005 letter. Obviously, the letter tells you what their position is and tells you what will happen if nothing is done at the time of retirement is your response. Right. And they ask for additional information. They don't give a timeline for when you have... You know, they don't say you better get your information in, you know, within six months. They say you have to do... There's two conditions that they sort of put on the letter. That's the way it will be if you retire, and that's the way it will be if you don't present any evidence with respect to any evidence supporting your reason. And they don't put a timeline on doing that. And I know it makes sense for educated people to do, you know, do things right away. But busy people are procrastinators and not lawyers who like to engage... You know, people who aren't lawyers don't like to engage a lot of times in conflict and present all of this. And there may not have been a problem. Forgetting about the rightness that we talk about, for him, this wasn't going... In his mind, it wasn't going to be an issue because he wasn't planning to retire before 2011. Thank you, counsel. Your time is up. Thank you. We'll hear from the owner. Mr. Lowenstein. Thank you, counsel. May it please the court, my name is Ralph Lowenstein, and I'm here on behalf of the Teachers Retirement System. Surprisingly, Mr. Eisenhamer and I have some agreement on some of the parts of this thing. We, too, would probably prefer that you reach the merits of this simply because it would do my client more good. I think we win on the timeliness issue. I think we win on the conversion. But, quite honestly, a decision by the court on the conversion issue would give us some good direction. We also apparently agree as far as what the purpose of the conversion rule is, and that's to prevent members from artificially inflating their pension benefits in the last several years of their service credit. We also agree that this is a case involving the interpretation of the conversion rule rather than an attack upon the right of TRS to promulgate the rule. That's not before the court. But we disagree... So why doesn't TRS follow the IRS rule? Well, the IRS rule really applies to something totally different from us. The terms are not even identical. There's a change in status, I think is the IRS term, and it has to do with elections under a cafeteria plan. The term that we use is change in family status. But the purpose of the IRS interpretations of cafeteria rules and the purpose that we're following are totally different. Several years ago, I wished that the IRS rules or interpretations were applied because I had a case before the Seventh Circuit, which I cited to this court, where the Seventh Circuit said there are totally different purposes and we're not going to use an interpretation under the IRS code and then apply it to, in my case, it was ERISA. That's a clear case, which is cited in our brief. So I really think that that's very much of a red herring in this case and can easily be discarded. So the only change in family status you would recognize is divorce or death? No, that's not the case. The family status is an example of a situation where we believe that, where we have interpreted that the conversion rule would not apply. It would include such things as divorce, remarriage, marriage, death, situation where a dependent is no longer eligible to receive health insurance benefits. What happened in this case was there wasn't a change in family status. What happened was Mr. Sartwell's wife got a new job. That's not a change in family status. And the reason why these things are different is that change in family status basically is something that you don't have control over. So you're not controlling whether you're converting non-reportable benefits into reportable benefits or salary. Unlike a situation here where he was still eligible to receive those health insurance benefits through his employer, he was basically shopping to be able to get a different kind of deal where he could inflate his compensable or creditable earnings and thereby inflate his pension. If he were smart enough to be shopping to inflate earnings, wouldn't he have known about the six-month time period within which to appeal? I can't answer that question. One thing I can say is with absolute certainty, because I've known Mr. Eisenhammer for a long time, he's a very fine attorney. If he had been representing Mr. Sartwell at that time, I have no doubt that he would have appealed within that six-month period. Didn't this action of Mr. Sartwell's actually save the district money? No. It really didn't. And that's sort of a red herring. Mr. Sartwell had a three-year contract from 2004 to 2007. The contract provided that the board would pay family health insurance. That cost about $12,900 at that time. He renegotiated the contract the following year for a two-year contract. Although the contract still has that same provision, everybody agrees that the board didn't actually do that. They increased the combination of his salary, his annuity, which is creditable earnings, and the board-paid retirement contribution by an amount of about $12,400. So there was a very, very tiny savings to the board that was clearly not the purpose of what happened here. It wasn't to save the board money. It was to allow Mr. Sartwell to convert a non-reportable benefit, in other words, his board-paid retirement, into creditable earnings or salary. In fact, there are several places in the record where he admits that. Isn't that contradictory if on the one hand you allow him to do that and on the other hand you say he doesn't get it on retirement? No, no, no. We didn't allow him to do that. We didn't have any control over that transaction. The only thing we have control over is whether or not we allow that to be considered to be salary for purposes of computing your retirement benefit. So that was totally okay between he and the Board of Education. It's not okay between the member and TRS when we're computing his retirement benefits. Let me, if I might, let me just focus a little bit on what the Conversion Rule actually said because here is a point of disagreement and I think it's a very clear point of disagreement. Mr. Eisenhammer kept saying it has to be for a legitimate reason. That's not the language of the Conversion Rule. The Conversion Rule creates a presumption that if you decrease the amount of non-reportable benefits seven years before your retirement date, in this case of course the non-reportable benefit was a fringe benefit of board paid retirement which under our rules is not creditable earnings. He did this two years before his retirement date. He said that there's a presumption that that was done for purposes of attempting to convert non-reportable benefits into reportable benefits. In order to overcome that presumption, the member must show by clear and convincing evidence that it was actually for some other reason provided by our regulation. And one of those reasons may not be to increase average salary. So that's something that the member has to prove by clear and convincing evidence to overcome this presumption. And in this case, Mr. Sargwell admitted that this was at least one of the reasons for making the conversion. And I've cited this in my brief, but if it would be helpful to the court, in the letter of October 5, 2007 that Mr. Sargwell wrote to TRS, he said as follows. Because I was not able to salary reduce to my wife's employer for purchase of that health insurance, the board agreed to eliminate the health insurance provision from my contract and provide my out-of-pocket health insurance premium for my wife's insurance in the form of salary so that I could pay for the coverage myself. Coverage for my wife's new employer allowed the board to continue to provide the health insurance premium to me only in an indirect manner and at a substantial savings. So he admits there that what they did was they stopped providing his health insurance. They gave him salary so he could then use that salary to pay for the health insurance. It's a classic conversion. In the letter that he wrote to Governor Blagojevich in February of 2008, he was even clearer. He said as follows. I agreed to a new contract with the Board of Education that expanded my job duties and released the board from paying for my insurance in exchange for a raise in salary. So he admits clearly, although I don't know how he could deny it, that they stopped providing a non-reportable benefit. They gave him a salary increase that he then used to pay for health insurance in another way. And that's exactly what the conversion rule is designed to prevent. I can come back to discussing the change in family status if the court feels that that hasn't adequately been addressed. There wasn't a change in family status here. His spouse changed employers. That didn't come within one of our examples, nor does it come within the interpretation of the purpose of the conversion rule, which is to prevent a member from artificially inflating their creditable earnings. It clearly says that the member must prove by clear and convincing evidence that none of the reasons for the conversion was to increase average salary, which has been admitted here. Well, how is this an artificial creation? It seems like it's a quid pro quo. They quit providing him insurance. They gave him the money to buy his insurance, not to increase his salary. Your Honor, that is exactly the point. What they did was they stopped paying him. They stopped providing a non-reportable benefit and converted that into salary. And the artificial inflation of his pension came because they increased his salary or attempted to increase his salary by $12,400 a year. And that would have had the effect of increasing his retirement benefits above what we feel he's entitled to if that was allowed to be considered to be salary for purposes of computation of his retirement benefits. That's where the artificial inflation of his retirement benefits comes in. But you've identified clearly why that is the case. You stopped providing a non-reportable benefit and you increased his salary. The second issue in this case has to do with the timeliness. We wrote a letter in 2005, November of 2005, in which we stated to Mr. Sartwell that if he retired prior to the 2011-2012 school year, which is the seven-year window, that this would be considered to be a conversion and that his creditable earnings would be reduced accordingly. He didn't appeal within the six-month period. He admits in the letters that he wrote to us that he received the notice. He admits that he understood that he had the right to appeal. And he also admitted that he intentionally decided not to appeal at that time because he didn't at that time believe that he was going to retire within a period of time. So this is not a situation where he didn't receive the notice, he didn't understand his rights, he didn't know the impact of not appealing. He just decided not to at that point. So we don't have a situation where somebody was deceived or fooled or didn't understand or didn't get notification. He just made the determination not to do so at that time, and he waited two and a half years before he filed an appeal. That is an alternative basis upon which I feel that the case should be affirmed. Based upon that, we would ask that the Court affirm the decision of the Board of Trustees and the Circuit Court in this case. So how hard would it have been to simply put in that audit notice that this is a staff disposition? I mean, at least that, even if you don't tell him you have six months to appeal. On reflection, it would be nice if that language was in there. The reality is that we have hundreds of staff dispositions made all the time by people who are not lawyers, and this was one of those. Does it differ in any way, this audit, from an ordinary staff disposition? There are lots and lots of ways in which staff dispositions get made. This is really no particular difference. The only difference is how this thing came up. They did a routine audit of the district, which they do periodically. They reviewed the contract, they found this, they advised Mr. Sartwell of their findings. But staff dispositions come up in various ways. Attorneys make inquiries, members make inquiries. They come out on your letterhead? Yeah. Excuse my ignorance in this field, but does the TRS have any power to discipline districts when they do things like this? No. There was nothing wrong with what the district did. They had a right to do this. It's just that it's not creditable earnings for purposes of TRS. So there's no reason for us to discipline the district, but that doesn't mean that it's creditable earnings or salary as defined by our rules and regulations. And in this case, it's not. It runs afoul of the conversion rule. It has a legitimate purpose, which is not being challenged in this case. Once again, I come back to something that I said earlier. One of the points of agreement between myself and opposing counsel is there's not a challenge to the authority of TRS to make this rule. There's not any challenge to the authority of TRS to promulgate a rule which does not allow fringe benefits to be considered creditable earnings. This is simply an interpretation of a legitimate rule. Do you disagree that the Matthews case applies in this case? I disagree that it applies in this case because in this case, without question, he received the notice, he understood the significance of it, and he decided on his own not to appeal. So I think that those are the clear distinctions. Thank you, counsel. Thank you. Mr. Eisenhammer. Well, I think Mr. Lowenstein made my case on the notice issue. He said that they have hundreds of employees who issue these letters, and they don't know the significance of those letters. That's why they can't put in the notice saying that it's a staff disposition because they themselves don't know the significance of those letters. So how is a non-member going to know that? It's their obligation. If they don't know it, then how is an employee going to know that? And that's what he said. Give them an employer's guide. Why can't their people read the employer's guide? Well, he could, but he wouldn't know it was a staff disposition because the letter doesn't say it's a staff disposition. He just mentioned they send out hundreds of letters in different forms, and no one knows what those are. And yes, if I were representing them, maybe I would have known, but these members write letters on their own, and this didn't come from them. I think it's wholly unfair, and that's what due process is about. If they don't know, you can't make the member know. With respect to the substantive rule itself, Mr. Lawson mischaracterizes the rule. He wants to read the rule that these are three examples, and these are the only three examples. That's not what the rule says. After our case, they amended the rule to say that. But in our case, they just say it's an example. They don't say it's the only examples. And he wants to read the rule in a catch-22. He wants to read out the examples. As long as there's an increase in salary, even if it saves you money, then we're not going to give it to you, even if you present a legitimate reason. I think in looking at it, you could say, for example, and this goes for somebody who's divorced too, and I think I hit it really wrong, it's the $90,000 he should get, not the $4,000, is that his wife got insurance. He didn't need that family insurance. So let him at least get the value of increase of his family insurance. He then also went under, she got single, and then they eventually got family. He could have kept his single, I guess. And he would have been okay, but it was cheaper to do that. So I'm looking for an alternative that would help save him some money. But I think he's entitled to everything because there was a savings. And there was a savings. It was at least $500 over last year. There was no raise in salary for the next year. And the district wasn't going to pay for increases in health insurance. So there was savings. And as far as Tourette's was concerned, they don't care if there was a savings. If the savings had been $7,000, they still would have disallowed it. And with respect to whether it's a change in status, I don't think you need to fall into that reason, as long as you have a legitimate reason, which he had, which is very similar to, even if you say this doesn't fall within their change of status, this is part of it, this is an example like it, but it does fall under there. It's exactly like it. He tries to make decisions between, well, under a change in family status, you don't have control. Well, you do. When you change a job, you have a right to negotiate the benefits you have. So you have control over what your new employer gives you as benefits. In a divorce situation, you have a right to determine who's going to carry the insurance for your dependents. So even in the examples he has, the member has control in order to do this. It's not the control, it's the fact. The rule is family status. And I think the IRS rule does apply, and it's good guidance in this case. He's wrong about the original rule, the IRS rule said change in family status, which included change in the spouse's employer. They later expanded the rule further, and then changed it to change in status. But the original rule that included change in the spouse's employer was termed change in family status. So it should cover. The original IRS rule did. The original IRS rule did. It said change in family status. I think we highlighted in the footnotes that the original rule did. They expanded it beyond what it originally was, which included, again, the change in the employer, to more things, and they changed the term to change in status. So it is essentially the same. It should be good guidance with respect to that. Would this be a change in status for the state of Illinois? Yes, they used that in cafeteria plans. Cafeteria plans are exempt from this rule as employer-paid contributions. An employer-paid contribution is non-credible, but if it comes in the form of a cafeteria plan where the employee elects insurance, which is all covered by the tier IRS regulations, then that is credible. So they have to follow the IRS rules, and they allow employees to make changes in credible earnings to go and expand the amount that you contribute to a cafeteria plan if you have a change in status. Thank you, counsel. We will take this matter under advisement and recess for the lunch hour.